WINEBRAKE & SANTILLO, LLC
Peter Winebrake, Esq. (to be admitted pro hac vice)
R. Andrew Santillo, Esq. (NJ ID #025512004)
Mark J. Gottesfeld, Esq. (NJ ID #027652009)
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
*Counsel for Plaintiffs*
(additional counsel listed on signature page)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE ANDUJAR and FRANKLIN PENA BATISTA, on behalf of themselves and all others similarly situated, | CIVIL ACTION |
| | NO. _____ |
| Plaintiffs, | |
| v. | (Document Filed Electronically) |
| HUB GROUP TRUCKING, INC., | |
| Defendant. | |

## COMPLAINT – CLASS ACTION

Jorge Andujar and Franklin Pena Batista (collectively "Plaintiffs") bring this class action lawsuit against Defendant Hub Group Trucking, Inc. for violations of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.*

## JURISDICTION AND VENUE

1.      Jurisdiction is proper under 28 U.S.C. § 1332(d) because (i) Plaintiffs and members of the proposed class are citizens of states different from that of Defendant; (ii) there are over 100 members in the proposed class; (iii) Defendant is subject to personal jurisdiction in New Jersey; and (iv) the aggregate damages sought on behalf of Plaintiffs and the putative class exceeds $5 million.

2.      Venue is proper under 29 U.S.C. § 1391.

## THE PARTIES

3.      Plaintiff Jorge Andujar ("Andujar") is a resident of North Bergen, New Jersey (Hudson County).

4.      Plaintiff Franklin Pena Batista ("Batista") is an adult resident of Long Pond, Pennsylvania.

5.      Defendant Hub Group Trucking, Inc. ("Defendant") is headquartered in Illinois.

6.      Defendant operates a terminal in New Jersey located in Kearny, NJ (Hudson County) and also maintains office space at this terminal where various members of Defendant's management perform work.

## STATEMENT OF FACTS

7.      Defendant is a transportation company that transports goods for its customers located throughout New Jersey.  These customers include, for example,

2

Home Depot, Costco, Home Goods, Kohls, and Best Buy, among many others.

8.    Defendant pays Plaintiffs and other drivers (collectively "New Jersey drivers") to deliver and pick up merchandise to and from its customers throughout New Jersey.

9.    New Jersey drivers generally are often required to report to Defendant's terminal located in Kearney, NJ in order to, among other things, interact with the Defendant's management and other office employees and to pick up Defendant's trailers which are embossed with Defendant's logos and usually pre-filled with merchandise.  New Jersey drivers then transport Defendant's merchandise to Defendant's customers (or sometimes pick up merchandise from Defendant's customers).

10.    Defendant has classified its New Jersey drivers as independent contractors.  However, in recent years, Defendant has begun to reclassify its drivers and has hired drivers as employees wherein they deliver the same merchandise delivered by New Jersey drivers.

11.    Defendant has required some New Jersey drivers to form companies as a condition of performing work for Defendant.  These associated corporate entities are formed and exist for the sole purpose of working for Defendant.

12.    Andujar worked for Defendant as a driver from approximately 2011 until approximately July 2023 and was classified by Defendant as an independent

3

contractor.

13. Batista worked for Defendant as a driver from approximately 2011 until approximately early 2023 and was classified by Defendant as an independent contractor.

14. As explained by this Court, "[t]he ABC test presumes that workers are employees and requires putative employers to prove otherwise by satisfying each element of the ABC test." *Portillo v. National Freight, Inc.*, 606 F. Supp. 3d 72, 84 (D.N.J. 2022) (Rodriguez, J.). As explained in paragraph 15-17 *infra*, Defendant will be unable to satisfy any of these elements.

15. First, Defendant was in control of the manner in which Plaintiffs and New Jersey drivers performed their services. Such control includes, but is not limited to, the following:

    a. New Jersey drivers received their assignments from Defendant which dictated the customers they were required to deliver or pick up merchandise from.

    b. New Jersey drivers are required to have their own trucks to perform delivery services and Defendant requires that their trucks bear Defendant's logo and Defendant's Department of Transportation Number.

    c. Defendant required New Jersey drivers to comply with various instructions and directives regarding their work duties.

    d. Defendant employs managers who have supervisory responsibility over New Jersey drivers who directed their work.

4

e.   New Jersey drivers occasionally received calls from terminal dispatch regarding issues with the camera or if they were not driving properly.

f.   Defendant monitored New Jersey drivers' work via a GPS tracking system and a camera.

g.   Defendant required New Jersey drivers to use Defendant's scanning devices so that deliveries could be tracked and downloaded to Defendant's computer systems.

h.   Defendant required New Jersey drivers to comply with certain directives, such as requiring them to obtain insurance and Defendant would randomly inspect their vehicles.

i.   New Jersey drivers had no control over the amounts charged for their delivery services.  They did not negotiate with retail customers regarding the rates charged for their services.

16.   Second, the delivery services performed by New Jersey drivers fall squarely within Defendant's usual course of business.  Indeed, New Jersey drivers are central to Defendant's business as a delivery company.  Further, New Jersey are often required to report to Defendant's terminal located in Kearney, NJ and they also perform their delivery services at the locations where Defendant's customers are located.

17.   Third, New Jersey drivers are not engaged in independently established trades, occupations, professions, or businesses.  Rather, New Jersey drivers generally worked exclusively for Defendant, were dependent upon Defendant for their income, and generally worked full-time, five days (or more) per week.

5

18. Each week, Defendant makes withholdings from the earnings of New Jersey drivers. These withholdings are itemized on weekly "Settlement Statements" and include, *inter alia*, withholdings for fuel, tolls, and insurance. Defendant also made withholdings up to a minimum of $1,000 for deposit into an "escrow fund" for each New Jersey driver so that Defendant could withdraw money for, *inter alia*, damages incurred by Defendant.

19. In addition, each week, Defendant diverts the earnings of Plaintiffs and other New Jersey drivers by requiring them to personally pay for work-related expenses such as, *inter alia,* gas expenses, maintenance and repair expenses associated with the trucks that Plaintiffs and New Jersey drivers were required to own.

20. Andujar and Batista both estimate that, during the past 6 years, Defendant has subjected each of them individually to pay withholdings and diversions exceeding $75,000.

21. Plaintiffs regularly worked more than 40 hours per week for Defendant. Specifically, Andujar estimates that during a typical week after September 2017, he worked approximately 50-60 hours. Likewise, Batista estimates that during a typical week after September 2017 he worked approximately 50-65 hours.

22. Defendant does not pay New Jersey drivers any overtime premium

6

compensation for hours worked over forty in a workweek.

## CLASS ALLEGATIONS

23.     Plaintiffs bring this action individually on behalf of themselves and other individuals who, either individually or through a closely held corporation, performed delivery services for Defendant and were based out of New Jersey within the past 6 years and were classified as independent contractors ("class members").

24.     Class action treatment of Plaintiffs' NJWHL claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

25.     The class, upon information and belief, includes over 100 individuals, all of whom are readily ascertainable based on Defendant's business records and are so numerous that joinder of all class members is impracticable.

26.     Plaintiffs are class members, their claims are typical of the claims of other class members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

27.      Plaintiffs and their lawyers will fairly and adequately represent the class members and their interests.

28.     Questions of law and fact are common to all class members, because, *inter alia*, this action concerns Defendant's common compensation policies, as

described herein. The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

29.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT I
### Violation of New Jersey Wage Payment Law
### (N.J. Stat. § 34:11-4.4)

30.     All previous paragraphs are incorporated as though fully set forth herein.

31.     Plaintiffs and other class members are employees entitled to the protections of the NJWPL.

32.     The NJWPL generally prohibits employers, such as Defendant, from making withholdings or diversions from the wages of Plaintiffs and other class members except for those withholdings or diversions permitted therein.  See N.J. Stat. § 34:11-4.4; see id. ("[n]o employer may withhold or divert any portion of an employee's wages.").

33.     Defendant violated the NJWPL by subjecting Plaintiffs and other class members to improper wage withholdings and diversions.

## COUNT II
### Violation of Overtime Violation of Wage and Hour Law
### (N.J. Stat. § 34:11-56a(4))

34. All previous paragraphs are incorporated as though fully set forth herein.

35. Plaintiffs and other class members are employees entitled to the NJWHL's protections.

36. Defendant is an employer covered by the NJWHL.

37. The NJWHL provides that employees within the trucking industry shall receive overtime premium compensation in an amount "not less than 1 ½ times the minimum wage required pursuant to this section and N.J.A.C. 12:56-3.1." N.J.S.A. § 34:11-56a4(f).

38. Defendant violated the NJWHL by failing to pay Plaintiffs and certain class members overtime premium compensation for hours worked over 40 hours during the workweek.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the class members, seek the following relief:

a. Certify a class pursuant to Rule 23 and appoint Plaintiffs and their counsel to represent a class of drivers who worked in New Jersey and were classified as independent contractors;

b. Award damages for all withholdings and/or diversions taken from Plaintiffs and class members' pay;

c. Award all overtime wages owed;

d. Award all costs and attorney's fees incurred prosecuting these claims;

e. Award liquidated damages;

f. Award interests and costs;

g. Such other relief as the Court may deem just and appropriate.

Dated: September 6, 2023          Respectfully submitted,

/s Mark J. Gottesfeld
Peter Winebrake, Esq. (*pro hac vice forthcoming*)
R. Andrew Santillo, Esq. (NJ ID #025512004)
Mark J. Gottesfeld, Esq. (NJ ID #027652009)
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Tel: (215) 884-2491
pwinebrake@winebrakelaw.com
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

Harold Lichten, Esq. (*pro hac vice*)
Matthew Thomson, Esq. (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

*Attorneys for Plaintiffs*

10